**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LIFE VAC LLC, | |
| Plaintiff, | |
| v. | Case No.: 24-cv-01806 |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | |
| Defendants. | |

**COMPLAINT**

Plaintiff Life Vac LLC ("Plaintiff" and/or Life Vac) hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on **Schedule A** attached hereto (collectively, "Defendants"):

**Introduction**

1.      This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with the Life Vac copyrights, which are covered by at least U.S. Copyright Office Registration Nos. VA 2-332-974, VAu 1-489-169, VAu 1-489-170, VA 2-335-339, VA 2-335-352, and VAu 1-495-820 registrations for promotional images of the Plaintiff's Life Vac product (the "LIFEVAC Copyrights"); and the Life Vac trademark, which is covered by U.S. Trademark Registration No. 6,735,265 (the "LIFEVAC Trademark").

2.      The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal copyright registration certificates for the LIFEVAC Copyrights are attached

1

hereto as **Exhibit 1**. A true and correct copy of the federal trademark registration certificates for the LIFEVAC Trademark, as well as a printout from the USPTO website evidencing Plaintiff as the owner of the LIFEVAC Trademark is attached hereto as **Exhibit 2**.

3.      Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products infringing upon Plaintiff's LIFEVAC Copyrights and LIFEVAC Trademark (the "Counterfeit Products"). By selling Counterfeit Products that purport to be genuine and authorized products using the LIFEVAC Copyrights and LIFEVAC Trademark (the "Life Vac Products"), Defendants cause confusion and deception in the marketplace.

4.      Plaintiff is forced to file this action to combat Defendants' coordinated counterfeiting of the LIFEVAC Copyrights and LIFEVAC Trademark, as well as to protect unknowing U. S. consumers from purchasing Counterfeit Products, as Plaintiff faces a swarm of attacks on its copyright and trademark rights.

5.      The Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), including, but not limited to, on the platforms AliExpress.com ("AliExpress"), Amazon.com ("Amazon"), eBay.com ("eBay"), and Walmart.com ("Walmart") (collectively, the "Marketplace Platforms").

6.      The Defendants design the online marketplace accounts to appear to be selling genuine Life Vac Products, while selling inferior imitations of such products.

7.      The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

8.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of the LIFEVAC Copyrights and

LIFEVAC Trademark, as well as to protect unknowing consumers from purchasing Counterfeit Products.

9. As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishing of its valuable trademark, copyrights, and goodwill and, therefore, seeks injunctive and monetary relief.

10. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District.

11. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## Subject Matter Jurisdiction

12. This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

13. This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

14. This Court has jurisdiction over the unfair deceptive trade practices claim in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## Personal Jurisdiction and Venue

15. This Court has personal jurisdiction over each Defendant, in that, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Illinois and in this Judicial District, and/or derive substantial revenue from business transactions in Illinois and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of

the State of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

16.     In addition, Defendants' illegal counterfeiting and infringing actions have caused injury to Plaintiff in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Illinois and this Judicial District.

17.     For example, Defendant Internet Stores accept orders of Counterfeit Products from and offer shipping to Illinois addresses located in this Judicial District. Screen shots of the shopping cart from Defendant Internet Stores allowing Counterfeit Products to be shipped to this Judicial District are attached to the Declaration of Michael Plunkett ("Plunkett Decl."), filed contemporaneously herewith, as **Exhibit 3**.

18.     Moreover, upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Illinois, in this Judicial District, through accounts (the "User Account(s)") on e-commerce sites including the  Marketplace Platforms, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them. Through these User Accounts, consumers in the U.S., including Illinois (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products, and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including Illinois (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Illinois (and more particularly, in this Judicial District).

19.     Defendants have transacted business with consumers located in the U.S., including Illinois (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

20.     Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright infringement in this Judicial District and do substantial business in the Judicial District.

**The Plaintiff**

21.     Plaintiff Life Vac LLC is a New York-based limited liability company with its principal place of business in Nesconset, New York.

22.     Plaintiff is the registered owner of the LIFEVAC Copyrights (attached as Exhibit 1), as follows:

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-332-974 | Easy As Place Push Pull Artwork | January 11, 2023 |
| VAu 1-489-169 | Lifevac Device Photos | January 11, 2023 |
| VAu 1-489-170 | Lifevac Device Color Artwork | January 11, 2023 |
| VA 2-335-339 | Lifevac Device Group Photos | January 12, 2023 |
| VA 2-335-352 | Lifevac Device Features Image | January 11, 2023 |
| VAu 1-495-820 | LifeVac Official Design | March 9, 2023 |

23.     Plaintiff is the registered owner of the LIFEVAC Trademark (attached as Exhibit 2) as follows:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 6,735,265 | LIFEVAC | May 24, 2022 |

**The Defendants**

24.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

25.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

**The Life Vac Products**

26.     Arthur Lih, an inventor and entrepreneur, established Plaintiff Life Vac LLC in 2013, with the goal of developing, designing, and creating a high-quality airway clearance device.

27.     In October 2014, Plaintiff launched the first Life Vac airway clearance device which became a bestseller on Plaintiff's website and on third-party e-commerce platforms like Amazon.

28.     Through Arthur Lih's continued innovation and creativity, Plaintiff's Life Vac Products have garnered a substantial customer base and international reputation because of their utility, advanced technology, and high-quality designs.

29.     Plaintiff has obtained copyright registrations for images of its Life Vac Products, which are covered by at least U.S. Copyright Office Registration Nos. VA 2-332-974, VAu 1-489-169, VAu 1-489-170, VA 2-335-339, VA 2-335-352, and VAu 1-495-820. Exemplary images of the Life Vac have been deposited with the United States Copyright Office and remain available for inspection there.

30.     Plaintiff sells Life Vac Products through Plaintiff's website, www.lifevac.net, and through online retailers including Amazon.

31.     Since at least 2022, the LIFEVAC Trademark is and has been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to widely market and promote the LIFEVAC Trademark in the industry and to consumers. Plaintiff promotes Life Vac Products through its website (https://lifevac.net/). Plaintiff also extensively promotes Life Vac Products through advertisement on major national television shows such as Inside Edition and through online advertisement campaigns on, among other platforms, Facebook, Instagram, and Twitter.

32.     The LIFEVAC Trademark is distinctive and identifies the product as originating from Plaintiff. Plaintiff's typical practice is to tie its name to its marketing of Life Vac Products. For example, Life Vac Products sold on Amazon all bear at least the trademark "LIFEVAC."

33.     The registration for the LIFEVAC Trademark constitutes prima facie evidence of their validity and of Plaintiff's exclusive right to use that trademark pursuant to 15 U.S.C. § 1057(b).

34.     The LIFEVAC Trademark qualifies as a famous mark, as that term is used in 15 U.S.C. §1125 (c)(1), and they have been continuously used and never abandoned.

35.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Life Vac Products.

36.     Plaintiff owns all rights, including without limitation, the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the LIFEVAC Copyrights as the owner of those copyrights.

**<u>The Defendants' Unlawful Conduct</u>**

37.     The success of the Life Vac Products has resulted in significant counterfeiting. Plaintiff has identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and import Counterfeit Products to consumers in this Judicial District and throughout the United States.

38.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2020 was over $1.3 billion. Websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

39.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online

retailers, outlet stores, or wholesalers selling genuine Life Vac Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

40.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

41.     Plaintiff has not licensed or authorized Defendants to use the LIFEVAC Copyrights or the LIFEVAC Trademark. None of the Defendants is an authorized retailer of genuine Life Vac Products.

42.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using without authorization the LIFEVAC Copyrights and the LIFEVAC Trademark within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Life Vac Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Life Vac Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff also seeks to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which the Defendants could continue to sell Counterfeit Products into this Judicial District.

43.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their

domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

44.     On personal knowledge and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

45.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores.  For example, some of the Defendant marketplace websites have virtually identical layouts, even though different aliases were used to register the respective domain names.

46.     In addition, the Counterfeit Products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

47.     The Defendants' Internet Stores also include other notable common features, including accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

48.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For

example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[1]

49.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[2]

50.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

51.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

52.      On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

53.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the LIFEVAC Copyrights and the LIFEVAC Trademark in

---

[1]     https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited February 23, 2024).

[2]     While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited February 23, 2024).

connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

54.     Each Defendant Internet Store offers shipping to the United States, including Illinois (in this Judicial District) and, on information and belief, each Defendant has offered to sell counterfeit Life Vac Products into the United States, including Illinois (in this Judicial District).

55.     Defendants' use of the LIFEVAC Copyrights and the LIFEVAC Trademark in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

56.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the LIFEVAC Copyrights and the LIFEVAC Trademark, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Life Vac Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

57.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and the Life Vac Products.

## FIRST CAUSE OF ACTION

### COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, et seq.)
### [Against Defendants Designated in Schedule A to the Complaint]

58.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-57 of this Complaint.

59.     Plaintiff owns all exclusive rights, including without limitation the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the LIFEVAC Copyrights.

60.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the LIFEVAC Copyrights without Plaintiff's permission.

61.     Defendants had access to the Life Vac Products incorporating Plaintiff's registered copyrights before Defendants created the Defendant Internet Stores.

62.     Upon information and belief, Defendants have directly copied the LIFEVAC Copyrights. Alternatively, Defendants' representations of Plaintiff's copyrights for the Life Vac Products in the online marketplace accounts are strikingly similar, or at the very least substantially similar to the LIFEVAC Copyrights, and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the Life Vac Products.

63.     As just one example, Defendants deceive unknowing consumers by using the LIFEVAC Copyrights without authorization within the product descriptions of their online marketplace accounts to attract customers as follows:






*Exemplary Images of Plaintiff's Registered LIFEVAC Copyrights,*

*Compared to*





*Exemplary Images from Defendants' Listings of Counterfeit Products*

64.     Defendants' exploitation of Plaintiff's copyrights for the Life Vac Products in the Defendant Internet Stores constitutes infringement of the LIFEVAC Copyrights.

65.     On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiff's copyright. Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiff made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of Counterfeit Products.

66.     Each Defendant either knew, or should have reasonably known, that images of Plaintiff's Life Vac Products were protected by copyright and that their representations infringed on Plaintiff's copyrights.  Each Defendant continues to infringe upon Plaintiff's rights in and to the various copyrighted works.

67.     As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff. Accordingly, Plaintiff seeks an award of damages pursuant to 17 U.S.C. § 504.

14

68.     In addition to Plaintiff's actual damages, Plaintiff is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

69.     In the alternative, Plaintiff is entitled to, and may elect to choose statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

70.     Plaintiff is entitled to and may elect to choose injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

71.     Plaintiff seeks and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

72.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known LIFEVAC Copyrights.

### SECOND CAUSE OF ACTION

### TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)
### [Against Defendants Designated in Schedule A]

73.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-72 of this Complaint.

74.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered LIFEVAC Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The LIFEVAC Trademark is a highly distinctive mark. Consumers have come to expect the highest quality from Plaintiff's products provided under the LIFEVAC Trademark.

75.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the LIFEVAC Trademark without Plaintiff's permission.

76.     Plaintiff is the registered owner of the LIFEVAC Trademark. The United States Registration for the LIFEVAC Trademark (Exhibit 2) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the LIFEVAC Trademark and are willfully infringing and intentionally using counterfeits of the LIFEVAC Trademark. Defendants' willful, intentional, and unauthorized use of the LIFEVAC Trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

77.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

78.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit Life Vac Products.

79.     Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of its well-known LIFEVAC Trademark.

### THIRD CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))
### [Against Defendants Designated in Schedule A]

80.     Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-79 of this Complaint.

81.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

82. By using the LIFEVAC Trademark in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

83. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

84. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510/1, et seq.)**
**[Against Defendants Designated in Schedule A]**

85. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-84 of this Complaint.

86. Plaintiff has not licensed or authorized Defendants to use the LIFEVAC Copyrights or the LIFEVAC Trademark, and none of the Defendants are authorized retailers of genuine Life Vac Products.

87. Defendants knowingly and intentionally trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's LIFEVAC Copyrights and LIFEVAC Trademark.

88. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

89. Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

90.     In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiff's products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking Life Vac Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the text and metadata of the Defendant Internet Stores; and (iii) taking other steps to deceive and confuse the consuming public.

91.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

92.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.     using the LIFEVAC Copyrights and LIFEVAC Trademark or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine LIFEVAC Product or is not authorized by Plaintiff to be sold in connection with the LIFEVAC Copyrights and LIFEVAC Trademark;

b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine LIFEVAC Product or any other product produced by Plaintiff that

is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the LIFEVAC Copyrights and LIFEVAC Trademark;

c.     committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.     further infringing the LIFEVAC Copyrights and LIFEVAC Trademark and damaging Plaintiff's goodwill;

e.     otherwise competing unfairly with Plaintiff in any manner;

f.     shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which copy the LIFEVAC Copyrights and LIFEVAC Trademark or any reproductions, counterfeit copies, or colorable imitations thereof;

g.     using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

h.     operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product embodying the LIFEVAC Copyrights and LIFEVAC Trademark or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine

LIFEVAC Product or not authorized by Plaintiff to be sold in connection with the LIFEVAC Copyrights and LIFEVAC Trademark.

2.      Entry of an Order that the Marketplace Platforms, including without limitation Alibaba, AliExpress, Amazon, eBay, and Wish, and any other online marketplace account through which Defendants are selling Counterfeit Products:

a.      disable and cease providing services for any accounts through which Defendants sell Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A;

b.      disable and cease displaying any advertisements used by or associated with Defendants in connection with their sale of Counterfeit Products; and

c.      take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3.      That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the LIFEVAC Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

4.      In the alternative, that Plaintiff be awarded statutory damages of not more than $30,000 for each and every infringement of the LIFEVAC Copyrights pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement and not less than $1,000 and not more than $2,000,000 for each and every use of the LIFEVAC Trademark and statutory damages of not less than $750 pursuant to 15 U.S.C. § 1117(c);

5.      That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6.      Award any and all other relief that this Court deems just and proper.

Dated*: March 4, 2024*                    Respectfully submitted,

                                          BOIES SCHILLER FLEXNER LLP

                                          */s/Christopher Tom*
                                          Christopher Tom
                                          55 Hudson Yards
                                          New York, NY 10001
                                          ctom@bsfllp.com
                                          (212) 446-2300

                                          *Attorney for Plaintiff Life Vac LLC*